**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**
**EAST SAINT LOUIS DIVISION**

| | |
|---|---|
| **BETH KLJAJICH and KATHLEEN CATES, Individually and On Behalf of All Others Similarly Situated**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**WHIRLPOOL CORPORATION**<br><br>**Defendant.** | JURY TRIAL DEMANDED<br><br>Case No. 15-217 |

## INTRODUCTION

1.      Plaintiffs brings this class action on behalf of themselves and all others similarly situated against Defendant Whirlpool Corporation ("Defendant" or "Whirlpool"), seeking damages and injunctive relief for the proposed Class as defined herein.

2.      This action is brought to remedy violations of applicable law in connection with Defendant's design, manufacture, sale and servicing of its self-cleaning ovens sold under the brand "Whirlpool" ("Ovens" or "Oven").  As a result of a design defect and/or a defect in material or workmanship: (a) use of the self-cleaning cycle as few as one or two times renders the Ovens unusable without costly repairs; and (b) use of the self-cleaning cycle five or six times damages the Ovens beyond repair.

3.      Plaintiff Kljajich asserts claims on behalf of herself and all others similarly situated.  Plaintiff Kljajich also asserts claims on behalf of herself and an Illinois subclass under the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/1 et seq.), the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, et seq.), breach of the

1

Uniform Commercial Code (810 ILCS 5/1-101 et seq.)

4.     Plaintiffs Kathleen Cates asserts claims on behalf of herself and all other similarly situated.  Plaintiffs Kathleen Cates also asserts claims on behalf of herself and a South Carolina subclass under South Carolina Unfair Trade Practices Act. (S.C. Code Ann. § 39-5-10).

## THE PARTIES

5.     Plaintiff Beth Kljajich is a citizen of the state of Illinois, residing in the city of Chicago.

6.     Plaintiff Kljajich purchased a Whirlpool Oven that had a self-cleaning mechanism.

7.     When Plaintiff Kljajich used the self-cleaning mechanism on her Whirlpool Oven, the oven broke down.

8.     When she purchased a new Whirlpool oven, Plaintiff Kljajich purchased the model that offered the self-cleaning mechanism, which was $300.00 more than the model without the option.

9.     Plaintiff Kljajich used the self-cleaning mechanism in her new oven and the motherboard burned up. It has taken five (5) repairs and the oven is still not fixed.  She had to spend money on a new oven to replace the one that failed.

10.    Plaintiff Kathleen Cates is a citizen of the state of South Carolina, city of Tega Cay.

11.    Plaintiff Cates purchased a Whirlpool Oven that had a self-cleaning mechanism.

12.    The self-cleaning mechanism of Plaintiff Cates's Oven does not work and the Oven does not cook properly anymore.

13.    Whirlpool Corporation is a Delaware corporation with its principal place of

business in Michigan at 2000 N. M-63 Benton Harbor, MI 49022-2692.

14.     Whirlpool makes, warrants, advertises and sells the Whirlpool and KitchenAid Ovens subject to this lawsuit (the "Ovens").

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § l332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which the Class members and Defendant are citizens of different states.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because the Lead Plaintiff is a resident of this judicial district and Defendant does substantial business throughout this district, and a substantial part of the events or omissions giving rise to Plaintiff's claims took place within this district.

17.     Defendant Whirlpool holds itself out to the public as a manufacturer of gas and electric ovens that deliver "exceptional results," as advertised prominently on Defendant's Whirlpool and KitchenAid website.

18.     Each of these Ovens has a self-cleaning capability that purportedly allows the consumer, with the touch of a button; to clean heavily soiled spots in the Oven. In conjunction with each sale, Defendant warranted that the defective Ovens were free from defects.

19.     Defendant has advertised, manufactured, produced, and/or distributed Ovens for several leading retailers in the United States, such as Ikea, Home Depot, Sears, P.C. Richard & Son.

20.     Whirlpool provided Plaintiffs and each owner of the subject Ovens with a one-year factory warranty for parts and labor and a five-year warranty for specified parts if they

become defective because of workmanship.

21.     The Ovens feature a self-cleaning capability that, upon the first or second use, damages the control panel as a result of excessive heat, requiring costly repairs in order to begin reusing the Oven.  After the fifth or sixth use of the self-cleaning cycle, the heat from the self-cleaning cycle damages the control panel beyond repair.

22.     The damage resulting from the self-cleaning cycle is not covered by the 5-year warranty.  However, consumers often do not use the self-cleaning feature during the first year, since the Oven has not yet been heavily used and dirtied.

23.     Whirlpool intended for customers to believe its Ovens were and are of first-rate quality (compared with other ovens) and listed its self-cleaning as one of its notable features, despite Whirlpool's knowledge that these statements were misleading due to its omission of material facts about defects in its Ovens.

24.     The self-cleaning cycle begins by pressing a button on the control panel, which is directly above the Oven door.  The Oven door then locks automatically and the Oven heats to extremely high temperatures.  The self-cleaning cycle lasts from two to over four hours.  Some Oven models have the additional ability to self-clean at different levels, and thus for longer period of times or at higher temperatures, depending on the level of cleaning desired.

25.     This extreme heat from the self-cleaning cycle ultimately damages the control panel, without which the Oven cannot operate, beyond repair after only five to six uses.

26.     Whirlpool has concealed material information regarding the Ovens, including the design defects and/or defects in material or workmanship which cause the Ovens to become unusable after one or two uses of the self-cleaning cycle and beyond repair after five or six uses. These defects deny customers use of the self-cleaning feature of the Ovens.

27.     Whirlpool has been aware of these defects since well before the class period but continues to manufacture and sell these Ovens with a self-cleaning feature.

28.     In light of Whirlpool's knowledge of the problems associated with, and the serious nature of the defects at issue, Whirlpool knew, or should have known, that it was selling the Ovens to consumers with a value that was substantially diminished.

29.     Plaintiffs and Class members reasonably expected that the Ovens would not contain design defects, and/or defects in material or workmanship, that would substantially impair the Ovens' performance and use.  Plaintiffs and Class members also reasonably expected that the Ovens would not require extensive and expensive repairs (or the purchase of extended or third party warranties to continuously attempt to fix problems inherent in the Ovens) as a result of the defects, which defects were known to Whirlpool at the time of sale.  If Whirlpool had not misrepresented and concealed material information regarding the defective nature of the Ovens, Plaintiffs and other members of the Class would not have purchased the Ovens at premium prices, and on the terms offered.

30.     As described above, Whirlpool is aware of the defects in the self-cleaning cycle that require costly repairs and ultimately result in the destruction of the Ovens.  Plaintiffs and many members of the Class have alerted Defendant to the defects with the self-cleaning cycle. Indeed, many members of the Class have posted their experiences with the defective Ovens on the Internet, including, but not limited to, postings appearing in on-line forums: GardenWeb Forums [1] and ConsumerAffairs. [2]

31.     In fact, Defendant tells consumers that the part is not defective, but it will offer

---

[1] http://ths.gardenweb.com/discussions/2320528/kitchenaid-ovens-problems-when-cleaning
[2] http://www.consumeraffairs.com/homeowners/kit_stoves.html

"15 to 30% off a new product if [] bought [] in the next 30 days." [3]

32.    To this day, Defendant continues to conceal material information from users, consumers, and the public.

33.    Any applicable statute(s) of limitations has been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein.  Plaintiffs and members of the Class could not have reasonably discovered the true, latent defective nature of the Oven Self-Cleaning feature until shortly before this class action litigation was commenced.

## TOLLING OF STATUTES OF LIMITATIONS

34.    Defendant was and remains under a continuing duty to disclose to Plaintiffs and members of the Class the true character, quality and nature of the Ovens, that this defect is based on a poor design and/or substandard materials, and that it will require costly repairs, poses a safety concern, and diminishes the resale value of the Ovens.

35.    As a result of this active concealment by Defendant, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## CLASS ACTION ALLEGATIONS

36.    Plaintiffs brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves the following class:

> Any and all individuals who purchased, at retail price and for personal use, an Oven (the "Class").

37.    Numerosity—Fed. R. Civ. P. 23(a)(1).  The Class is comprised of over 100 people and possibly thousands of individuals who were Defendant's customers, the joinder of which in one action would be impracticable.  The exact number or identification of the Class members is presently unknown.  The identity of the Class members is ascertainable and can be determined

---

[3] http://www.consumeraffairs.com/homeowners/whirlpool_ranges.html

based on Defendant's records.

38.   Predominance of Common Questions—Fed. R. Civ. P. 23(a)(2), 23(b)(3).   The questions of law and fact common to the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

(a)   Whether the Ovens are defective;

(b)   Whether Whirlpool knew or should have known the defective nature of its Ovens before making it available for purchase and use by Plaintiffs and the Class;

(c)   Whether Defendant owed a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacture, warranting, and marketing of the Ovens;

(d)   Whether Defendant breached its duties to Plaintiffs and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacturer, warranting, and marketing of the Ovens;

(e)   Whether Defendant breached its duty to Plaintiffs and the Class by failing to promptly withdraw the defective Ovens from the marketplace or take other appropriate remedial action.

(f)   Whether the Ovens failed to perform in accordance with the reasonable expectations of ordinary consumers such as Plaintiffs and the Class.

(g)   Whether Defendant's Oven fails to perform as advertised or warranted.

(h)   Whether Defendant breached its express warranties to Plaintiffs and the Class by selling defective Ovens to Plaintiffs and the Class and then refusing to cover the full costs associated with repairing, removing, and/or replacing the Ovens.

(i)   Whether Defendant breached its implied warranties to Plaintiffs and the Class by advertising, marketing, and selling Ovens not of merchantable quality, or unfit for its intended purpose, and then refusing to cover the full costs associated with repairing, removing, and/or replacing the defective Ovens.

(j)   Whether Plaintiffs and the Class are entitled to compensatory damages, including but not limited to the cost to repair the Oven, remove and replace the Oven, as well as damages from the diminution of value of Class members' Ovens.

(k)   Whether Whirlpool concealed material facts from its communications and disclosures to Plaintiffs and the Class regarding the defects inherent in the Ovens;

    (l)      Whether Whirlpool has engaged in deceptive acts or practices in connection with the sale of the Ovens;

    (m)    Whether Whirlpool breached its warranty and/or extended warranties; and

    (n)     Whether, as a result of Whirlpool's conduct, Plaintiffs and the Class have suffered damages; and if so the appropriate amount thereof.

39.    <u>Typicality—Fed. R. Civ. P. 23(a)(3)</u>.  Plaintiffs' claims are typical of those of the Class in that Plaintiffs, like all Class members, have the Ovens installed in their respective structures and are subject to losses from the failure of the Ovens.  Plaintiffs have experienced problems with the Ovens consistent with those experienced by Class members.  Plaintiffs have suffered damages in the form of costs to replace and repair the Ovens, as well as the diminution of value of the underlying real property, and such damages are consistent with those suffered by Class members.

40.    <u>Adequacy—Fed. R. Civ. P. 23(a)(4); 23(g)(1)</u>.  Plaintiffs are adequate representatives of the Class because they fit within the class definition and their interests do not conflict with the interests of the Members of the Class they seek to represent.  Plaintiffs are represented by experienced Class Counsel.  Class Counsel have litigated numerous class actions, and Plaintiffs' counsel intends to prosecute this action vigorously for the benefit of the entire Class.  Plaintiffs and Class Counsel can fairly and adequately protect the interests of all of the Members of the Class.

41.    <u>Superiority—Fed. R. Civ. P. 23(b)(3)</u>.  The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts.  Plaintiffs and members of the Class have suffered irreparable harm as a result of Defendant's bad faith, fraudulent, deceitful, unlawful, and unfair conduct.  Because of the size of

the individual Class members' claims, no Class members could afford to seek legal redress for the wrongs identified in this Complaint.  Without the class action vehicle, the Class would have no reasonable remedy and would continue to suffer losses, as Defendant continue to engage in the bad faith, unlawful, unfair, and deceptive conduct that is the subject of this Complaint, and Defendant would be permitted to retain the proceeds of its violations of law.  Further, individual litigation has the potential to result in inconsistent or contradictory judgments.  A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

42.     Plaintiffs and the Class do not anticipate any difficulty in the management of this litigation.

### FIRST CAUSE OF ACTION
### VIOLATION OF THE ILLINOIS UNIFORM
### DECEPTIVE TRADE PRACTICES ACT (815 ILCS 510/1 ET SEQ.)
### (ASSERTED ON BEHALF OF PLAINTIFF KLJAJICH AND THE ILLINOIS-
### SUBCLASS)

43.     Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

44.     Pursuant to 815 ILCS 510/1, et seq., a person likely to be damaged by an unfair trade practice of another may be granted injunctive relief upon terms that the court considers reasonable.

45.     In pertinent part, pursuant to 815 ILCS 510/2(a)(12), a person engages in an unfair trade practice when, in the course of his or her business, vocation, or occupation the person… engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

46.     In particular, in violation of 815 ILCS 510 *et seq.*, Defendant, through its employees, agents and representatives engaged in conduct which creates a likelihood of confusion or misunderstanding by:

(a) selling an Oven that bears a self-cleaning button, but the self-cleaning mechanism does not work after one or a few uses; and

(b) advertising that the Oven has a self-cleaning function, but the self-cleaning function does not work after one or a few uses.

47.     In violation of ILCS 510 et seq., Defendant represents that the Ovens have "characteristics" (the ability to self-clean), "uses" (self-cleaning), or "benefits" (the ability to self clean) that the Oven does not have.

48.     In violation of ILCS 510 *et seq.*, Defendant represents that the Ovens are of a particular standard, quality, or grade or that the Ovens are a particular style or model – namely, that the Oven model contains a functioning self-cleaning mechanism – and the Ovens do not have a functioning self-cleaning mechanism;

49.     In violation of ILCS 510 *et seq.*, Defendant advertises the Ovens with a self-cleaning mechanism with intent not to sell them as advertised;

50.     Each of the aforementioned actions and failures to act of Defendant constitute an unfair trade practices within the meaning of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq.

51.     As a result of each of the aforementioned unfair trade practice, Defendant have directly, foreseeably, and proximately caused damages to Plaintiffs and Class

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS**
**PRACTICES ACT (815 ILCS 505/1, ET SEQ.)**
**(ASSERTED ON BEHALF OF PLAINTIFF KLJAJICH AND THE ILLINOIS-**

SUBCLASS)

52.     Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

53.     At all times relevant hereto, there was in full force and effect the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (the "ICFA"). Section 2 of the ICFA provides in relevant part as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use of or employment of any deceptive, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use of employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby, In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

815   CS 505/2 (footnotes omitted).

54.     Plaintiff Kljajich and other members of the Illinois Class, as purchasers of the Ovens, are consumers within the meaning of the ICFA given that Defendant's business activities involve trade or commerce, are addressed to the market generally and otherwise implicate consumer protection concerns.

55.     Section 2 of the ICFA, 815 ILCS 505/2, renders unlawful the "use or employment of any deception [including the] concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ... in the conduct of any trade or commerce…"

56.     Defendant's misrepresentations about the Ovens having a functioning self-cleaning mechanism, as well as its failure to disclose the fact that the self-cleaning mechanism

11

does not work and that renders the oven unusable, are deceptive and/or unfair acts or practices prohibited by the ICFA.

57.    Defendant intended to be deceptive and/or unfair to Plaintiff Kljajich and the Illinois Sub-Class by intentionally making the foregoing false and misleading statements and omitting accurate statements as alleged above, because had Defendant provided accurate information, Plaintiffs and the Class members would not have purchased the Oven.

58.    Defendant's practice of creating and approving marketing and advertising statements regarding the Products that contained false and misleading representations is both an unfair act and deceptive practice prohibited by the ICFA.

59.    Defendant intended to be deceptive and unfair to Plaintiff Kljajich and the Class members by unlawfully representing that the Ovens had a working self-cleaning mechanism and therefore Plaintiff Kljajich and the Class could use the self-cleaning mechanism to clean its Oven.  Defendant's intent is evidenced by; *inter alia*, its prominent marketing and advertising of the Products as having a self-cleaning mechanism and by having a self-cleaning button on the Ovens themselves.  Defendant continued to make this misrepresentation after they knew the self-cleaning mechanism would break after one or a few uses and render the Oven unusable.

60.    Defendant intended that Plaintiff Kljajich and the Illinois Sub-Class rely on its misrepresentations as to the ability of the Oven to self-clean and cook foods when purchasing them, and Defendant omitted to disclose to or notify Plaintiffs and the Illinois Sub-Class of the fact that the self-cleaning mechanism would break after one or a few uses, rendering the Oven unusable - even after they knew of the Oven was defective.

61.    Plaintiff Kljajich and the Illinois Sub-Class members justifiably relied on the misrepresentations and omissions to their detriment by purchasing the Ovens after seeing the

advertisements, the marketing, and/or seeing the self-cleaning button on the Oven models. Indeed, Defendant made no attempt to inform consumers that the Oven did not contain a functioning self-cleaning mechanism or that the self-cleaning mechanism would break after one or a few uses, rendering the Oven unusable, until long after Plaintiffs and the Illinois Sub-Class members made their purchases of the Ovens and long after Defendant knew of the problems associated with the Oven's self-cleaning mechanism.

62.     The above-described deceptive and unfair acts offend public policy and cause substantial injury to consumers.

63.     As a direct and proximate result of the foregoing, the Plaintiff Kljajich and the Illinois Sub-Class members have been damaged in an amount to be determined at trial, including compensatory damages, including: (a) the cost to repair the Oven, (b) the cost to remove the oven; (c) the cost to replace the Oven, and (d) diminution of value of Class members' Ovens, and (e) other miscellaneous incidental and consequential damages.

64.     Plaintiff Kljajich and the Illinois Sub-Class members seek damages, together with appropriate punitive damages, attorneys' fees, and costs of suit pursuant to the ICFA.

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(810 ILCS 5/1-101 ET SEQ.)**
**(ASSERTED ON BEHALF OF 62. PLAINTIFF KLJAJICH AND THE ILLINOIS-SUBCLASS)**

65.     Plaintiff Kljajich repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

66.     Plaintiff and the Class purchased Defendant self-cleaning Ovens at venues that posted Defendant's advertisements and/or signage stating that the Ovens had a self-cleaning function.

67.     Defendant's advertisements and signage state that the Ovens have a self-cleaning function.

68.     Defendant's advertisements, signage, and self-cleaning buttons on the product gave rise to an express warranty.

69.     By virtue of its advertisements, website, the buttons on the Ovens themselves, and overall media reach, Defendant and other sellers of Defendant's Ovens expressly warranted the self-cleaning Oven as containing a self-cleaning mechanism when the Ovens contain a self-cleaning mechanism that works, if at all, a few times.

70.     At all relevant times there was in full force and effect the Illinois Uniform Commercial Code, 810 Ill. Comp. Stat. 5/1-101, et seq. (the "UCC").

71.     Section 2-313 of the UCC (810 Ill. Comp. Stat. 5/2-313) provides, in pertinent part:

Express Warranties by Affirmation, Promise, Description, and Sample.

(1) Express warranties are created as follows:

   (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

   (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he has a specific intention to make a warranty.

14

72.     The descriptions and representations that the self-cleaning Oven had a self-cleaning mechanism were the bases of the bargains between Plaintiff, Plaintiff's Class, and Defendant and its resellers when Plaintiff and the class members purchased the products.

73.     Defendant failed to deliver on the basis of the bargain between it, the Plaintiff, and the class members as the Ovens sold by Defendant do not have a self-cleaning mechanism that works, or at best, works only a few times.

74.     There was a defect in the Ovens warranted because the self-cleaning mechanism in the Oven does not work, or at best, works only a few times.

75.     Defendant was notified of its breach via notice of revocation letter.

76.     Defendant did not effectively repair or replace the Ovens.

77.     Plaintiffs would not have purchased the Ovens had they been advised that the self-cleaning mechanism did not work at all, or at best, for a few times.

78.     Plaintiffs made a demand on Defendant revoking acceptance, individually and on behalf of all others similarly situated, and demanded Defendant to refund the entire purchase price to the class.

79.     Defendant's failure to refund the entire purchase price to Plaintiff and the members of the class has caused Plaintiff and the class members damage in the full amount of the purchase prices.

**FOURTH CAUSE OF ACTION**
**UNIFORM COMMERCIAL CODE**
**NONCONFORMITY OF GOODS**
**(ASSERTED ON BEHALF OF PLAINTIFF KLJAJICH AND THE ILLINOIS-SUBCLASS)**

80.     Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

15

81.     Section 2-301 of the UCC provides that the seller is obligated to transfer and deliver the contracted goods in accordance with the contract.  According to the UCC's Official Comments under 2-301, in order 'to determine what is in 'accordance with the contract' under this Article usage of trade, course of dealing and performance, and the general background of circumstances must be give due consideration in conjunction with the law meaning of the words used to define the scope of the conditions and duties."  810 ILL. COMP. STAT. 5/2-301, Official Comments.

82.     "Contract" is defined under UCC 1-201(11) as the total legal obligation which results from the parties' agreement as affected by the UCC and other applicable rules of law. 810 Ill. Comp. State 5/1-301.

83.     "Agreement" means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing and usage of trade or course of performance as provided in the UCC. 810 Ill. Comp. Stat. 5/1-201(3).

84.     Under the conditions that Plaintiff and the members of the class purchased Defendant's Ovens as set forth herein, the general background and implication for the circumstances was (and continues to be) that such Oven contained a functioning self-cleaning mechanism.

85.     Defendant failed to sell Plaintiff Kljajich and members of the class self-cleaning Ovens, and thus, Defendant failed to transfer or deliver conforming goods as required by the UCC.

86.     Defendant's breach proximately caused damage to Plaintiff and the members of the class.

## FIFTH CAUSE OF ACTION
## VIOLATION OF THE SOUTH CAROLINA

**UNFAIR TRADE PRACTICES ACT**
**(S.C. CODE ANN. § 39-5-10, ET SEQ.)**
**(ASSERTED ON BEHALF OF PLAINTIFF CATES**
**AND THE SOUTH CAROLINA CLASS MEMBERS)**

87.     Plaintiff Cates repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

88.     Defendant has repeatedly and willfully engaged in unfair and deceptive acts and practices in the conduct of trade or commerce within the meaning of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10, et seq.

89.     In particular, Defendant's misrepresentations about the self-cleaning mechanism, Defendant placing a self-cleaning button on the models, as well as its failure to disclose that the self-cleaning mechanism fails to work after one or a few uses rendering the Oven and the self-cleaning mechanism unusable, are deceptive and/or unfair acts or practices prohibited by the SCUTPA.

90.     Defendant intended to be deceptive and unfair to Plaintiff Cates and the Class members by unlawfully representing that the Products contained an oven that could be used to cook and that the oven contained a self-cleaning mechanism.

91.     Defendant's intent is evidenced by; *inter alia*, its prominent advertising of the Products as having a self-clean cycle and by putting a self-clean button on the Oven and floor models.

92.     Defendant continued to make this misrepresentation after they knew of the problems associated with use of the Oven's self-clean cycle.

93.     Plaintiff Cates and the South Carolina Sub-Class members justifiably relied on the misrepresentations and omissions to their detriment by purchasing the Ovens after seeing the

product, which bore a self-cleaning button or advertisements describing the Oven as having a self-cleaning option.

94.     Indeed, Defendant made no attempt to inform consumers that the Oven's self-cleaning mechanism would break after one or a few uses and, in some instances, render the Oven unusable.

95.     Defendant's violations of SCUTPA occurred in the ordinary course of business, affect the public concern, and are capable of repetition.

96.     Defendant's actions are a willful and knowing violation of § 39-5-10 et seq., with disregard for the rights of Plaintiff and the public interest.

97.     As a direct and proximate result of the foregoing, Plaintiff Cates and the South Carolina Class have been damaged in an amount to be determined at trial, including (a) the cost to repair the Oven, (b) the cost to remove the oven; (c) the cost to replace the Oven, and (d) diminution of value of Class members' Ovens, and (e) other miscellaneous incidental and consequential damages.

98.     Because Defendant knowingly and willfully engaged in unfair and deceptive acts and practices, which proximately caused Plaintiff Cates injuries, Plaintiff Cates is entitled to recover treble damages, attorney fees and costs pursuant to SCUTPA, S.C. Code Ann. § 39-5-140 (2006).

99.     Plaintiff Cates and the members of the Class are consumers who purchased Whirlpool Ovens for personal use.

100.     The acts and practices of Defendant complained of herein, including: (1) selling Ovens with a design flaw that damaged the Oven beyond repair after only five or six uses of the self-cleaning feature; (2) misrepresenting that the Oven has a functioning self-cleaning

mechanism which it does not; and (3) failing to disclose and/or concealing this known defect and risk, constitute deceptive and otherwise unfair trade practices in violation of S.C. Code Ann. 39-5-10 et seq. (the South Carolina Unfair Trade Practices Act).

101.    Defendant's acts and conduct alleged herein adversely affect the public's interest and are capable of repetition.

102.    Defendant's actions are a willful and knowing violation of 39-5-10 *et seq.*, with disregard for the rights of Plaintiff and the public interest.

103.    As a direct result of Defendant's deceptive and/or unfair trade practices, Plaintiff Cates and the proposed Class have been injured and suffered damages, and are entitled to recover treble damages, costs, and attorney's fees.

104.    Whirlpool has engaged in unfair and/or deceptive practices in the sale of its Ovens for Defendant warranted that Ovens were free from defects, although it knew that the self-cleaning functions did not operate properly.

105.    Defendant continues to operate and conduct its business as described herein for consumers in South Carolina, and therefore the potential for Defendant's repetition of its actions without intervention is certain.

106.    Further, Defendant has committed similar deceptive acts and/or practices in the past towards others with regard to the allegations herein.

107.    As a proximate result of the Defendant's willful use of unfair and deceptive acts and practices, Plaintiff Cates and the Class have suffered and will continue to suffer ascertainable financial damages in an amount to be determined at trial and trebled by the Court in accordance with S.C. Code Section 39-5-140(a).

<div style="text-align:center">

**SIXTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**

</div>

**(ASSERTED ON BEHALF OF ALL PLAINTIFFS AND THE CLASS)**

108.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

109.    Whirlpool warranted that all of the Ovens were free from defects in material or workmanship at a time when it knew that these Ovens suffered from a serious defect and, nevertheless, continued to market and sell these Ovens with this express warranty.

110.    Whirlpool also sold extended warranties to Plaintiffs and some members of the Class even though it had no intention of remedying the serious defects in material and workmanship inherent in the Ovens and has continued to market and sell extended warranties with respect to the Ovens despite the serious defects in the Ovens.

111.    Whirlpool has breached its express warranties, as set forth above, including its extended warranties, by supplying the Ovens in a condition which does not meet the warranty obligations undertaken by Whirlpool and by failing to repair or replace the defect and/or defective parts inherent in the Ovens.

112.    Whirlpool has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Whirlpool's knowledge, Whirlpool refuses to honor its warranty, even though it knows of the inherent defect in the Ovens.

113.    In addition, Whirlpool has received, upon information and belief, thousands of complaints and other notices from its customers nationwide advising it of the defects in the Ovens.

114.    Plaintiffs have given Defendant a reasonable opportunity to cure its failures with respect to its warranties, and Defendant failed to do so.

115.    Whirlpool has failed to provide to Plaintiffs or the Class members, as a warranty

replacement, a product that conforms to the qualities and characteristics that Whirlpool expressly warranted when it sold the Ovens to Plaintiffs and members of the Class.

116.    As a result of Whirlpool's breach of warranty, Plaintiffs and the Class have suffered damages in an amount to be determined at trial.

<div align="center">

**SEVENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(ALTERNATIVE COUNT TO BREACH OF CONTRACT)**
**(ASSERTED ON BEHALF OF ALL PLAINTIFFS AND THE CLASS)**

</div>

117.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

118.    A party is unjustly enriched when it retains a benefit to the detriment of anther party against fundamental principles of justice, equity, and good conscience.

119.    Defendant represented to a class of consumers that its Ovens had a functional self-cleaning mechanism.  Defendant Ovens contain a self-cleaning button on the Ovens themselves.

120.    Defendant made such representations in order to increase the sales of its products.

121.    Defendant's representation was false in that that the subject Ovens do not contain a self-cleaning mechanism that functions more than one or a few times.

122.    Defendant's advertising materials do not inform consumers, including Plaintiffs and the class, that the Ovens do not have a functioning self-cleaning mechanism.

123.    Defendant has reaped millions of dollars in profits as a result of its collection of money from consumers based on its false advertising campaign.  That Defendant amassed such earnings, and retains such benefit to the detriment of Plaintiffs and the class members, violates the fundamental principles of justice, equity, and good conscience.

124.     Defendant has been and continues to be unjustly enriched through its above-described conduct.

125.     Defendant should be required to disgorge the monies it has unjustly obtained to the detriment of Plaintiffs and the class members.

<div align="center">

**EIGHTH CAUSE OF ACTION**
**VIOLATIONS OF MAGNUSON-MOSS FEDERAL WARRANTY ACT**
**15 U.S.C. 2301, ET SEQ.**
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

</div>

126.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

127.     The Ovens constitute "consumer products," as defined in 15 U.S.C. §2301.

128.     Plaintiffs and the other Class members are "consumers," as defined in 15 U.S.C. §2301.

129.     Defendant is a "supplier" of the Ovens as defined in 15 U.S.C. §2301.

130.     Defendant is a "warrantor" as defined in 15 U.S.C. §2301.

131.     Defendant supplied a "written warranty" regarding the Class Vehicles, as defined in 15 U.S.C. §2301(6).

132.     As suppliers and in connection with the sale of the Ovens, Defendant made "implied warranties" arising under State law regarding the Ovens, as defined in 15 U.S.C. §2301(7).

133.     The warranties made by Defendant pertained to consumer products costing the consumer more than five dollars, see 15 U.S.C. §2302(e).

134.     Plaintiffs invoke federal jurisdiction for their claims stated under this Count pursuant to the Class Action Fairness Act.

135.    Defendant violated the Magnuson-Moss Federal Warranty Act by its failure to comply with the express and implied warranties it made to Plaintiffs and other Class members. See 15 U.S.C. §2301, et seq.

136.    Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the Magnuson-Moss Federal Warranty Act claims in this Count, whether premised upon express or implied warranty, is procedurally and substantively unconscionable under federal law and the applicable state common law.

137.    Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the claims in this Count is tolled under equitable doctrines.  Plaintiffs, and the other Class members, sustained injuries and damages as a proximate result of Defendant's violation of its written and/or implied warranties, and are entitled to legal and equitable relief against Defendant, including economic damages, rescission or other relief as appropriate.

<div align="center"><strong>PRAYER FOR RELIEF</strong></div>

WHEREFORE, Plaintiffs, on behalf of themselves and the Class pray for judgment against

Defendant granting the following relief:

a.    An order certifying this case as a class action and appointing Plaintiffs's counsel to represent the Class;

b.    All recoverable compensatory and other damages sustained by Plaintiffs and the Class;

c.    Actual, treble, and/or statutory damages for injuries suffered by Plaintiffs and the Class in the maximum amount permitted by applicable law;

d.    An order (1) requiring Whirlpool to immediately cease its wrongful conduct as set

forth above; (2) enjoining Whirlpool from continuing to conceal material information about the defect; and (3) requiring Whirlpool to refund to Plaintiffs and all members of the Class the funds paid to Whirlpool for the defective Ovens, and/or repairs resulting from the defect;

     e.     Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

     f.     Such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demands a trial by jury on all causes of action so triable.

Date: <u>February 27, 2015</u>        By: <u>   s/Corey D. Sullivan   </u>

<div style="margin-left:3em">

Corey D. Sullivan
SULLIVAN LAW LLC
1814 E Eagle Bay Drive
Evansville, Indiana 47725
corey@druginjurylegal.com
Phone: 855-571-3789

Jasper D. Ward IV
JONES WARD PLC
312 S. Fourth Street 6th Floor
Louisville, KY 40202
jasper@jonesward.com
Phone: 502-882-6000

</div>